The Atchison, Topeka & Santa Fé Rld. Co. v. The State, *ex rel.* Marion Sanders.

Sec. 60, Ch. 23, of Gen. Stat., *Unconstitutional.* Under that provision of the constitution of Kansas—art. 6, § 6—which provides that "the proceeds of fines for any breach of the penal laws shall be exclusively applied" "to the support of common schools," all the proceeds of penalties imposed as punishment for a breach of a penal statute, (and not imposed as damages where loss has been sustained,) must "be exclusively applied to the support of common schools," and any enactment of the legislature providing otherwise is unconstitutional and void. Hence, an act of the legislature giving to an informer who has sustained no loss one-half of such proceeds, is unconstitutional and void.

*Error from Lyon District Court.*

Marion Sanders, the relator, by his attorneys, instituted a suit against the *Atchison, Topeka & Santa Fé Railroad Company* to recover 207 separate penalties, of twenty dollars each, amounting to $4,140, for a failure on the part of the railroad company to ring a bell or sound a whistle while crossing Jefferson street, in the town of Plymouth, in Lyon

1—22 KAS.

county, brought under the provisions of § 60, ch. 23, Gen. Stat. 1868. The defendant demurred to the petition, on the grounds that the plaintiff or relator had no legal capacity to sue; that the court had no jurisdiction; and that the petition did not state facts sufficient to constitute a cause of action. The demurrer was overruled. The defendant then moved to require the plaintiff to elect on which cause of action it would proceed to trial, there being 207 causes of action, which motion was also overruled. The defendant then moved to strike the petition from the files and dismiss the action, because the relator or his attorneys were not the county attorney or attorney general, or authorized by either of them to bring the action; and because the action was not brought or prosecuted by either the county attorney or attorney general, which motion was also overruled. The railroad company thereupon answered, denying generally the allegations of the petition, and setting up as special defenses, that neither the relator nor his attorneys were county attorney or attorney general, or authorized by them to bring or maintain the action; and that neither relator nor his attorneys had the right to prosecute the same in the name of the state of Kansas; and that since the commencement of the action, § 60 of ch. 23, Gen. Stat. 1868, had been repealed. The plaintiff filed a reply of general denial. The defendant, at the term at which the case was tried, filed its motion for a continuance, based on an affidavit appearing at length in the record, which motion was also overruled; and the case came on for trial at the September Term, 1876, of the district court. The defendant thereupon objected to the appearance of Ruggles & Sterry for the state, on the ground that neither of them was the county attorney or attorney general, or authorized by either of these officers to appear and prosecute, which motion was also overruled. It then moved that they be required to show their authority for appearing, which motion was also overruled; and upon a jury being impanneled and sworn to try the case, and the relator having been sworn as a witness, the railroad company objected to the in-

troduction of any evidence under the petition, because it did not state facts sufficient to constitute a cause of action, which objection was also overruled, and the trial was proceeded with. Evidence was heard on both sides. The jury, after being instructed by the court, retired to consider their verdict, and afterward returned into court a verdict of $1,680 for the plaintiff. The railroad company moved for a new trial, which motion was also overruled; judgment was thereupon rendered for the plaintiff, which judgment the defendant seeks to reverse in this court.

*Ross Burns,* and *J. G. Waters,* for plaintiff in error, argued—

1. That this suit was improperly brought; that no private person or attorney has any right or authority to use the name of the state of Kansas to recover a penalty; and that no informer can have any interest in or right to bring suit for any penalty, or part thereof, under the provisions of the state constitution; and even admitting that he has such interest, he cannot have any authority to use the name of the state, unless the law expressly gives it to him—citing, Gen. Stat., ch. 25, § 136; Gen. Stat., ch. 102, § 64; *The State v. Anderson,* 5 Kas. 116; *Craft v. Jackson Co.,* 5 Kas. 521; *Bobbett v. Dresher,* 18 Kas. 14, 15; *The State v. Jefferson Co.,* 11 Kas. 71, 72; *Miller v. Town of Palermo,* 12 Kas. 16; *The State v. McLaughlin,* 15 Kas. 233; *Crowell v. Ward,* 16 Kas. 62; *Center Township v. Hunt,* 16 Kas. 439; *Confiscation Cases,* 7 Wall. 457; Gen. Stat., ch. 31, § 307.

2. The relator had no right to bring the suit, for the reason that he had no interest in the proceeds, and was entitled to no part of the penalties inflicted, under the provisions of the constitution. To be sure, the law itself gives the informer one-half, but we think such a provision is clearly void. In support of this view, counsel cited § 6 of art. 6 of the state constitution; *Dutton v. Fowler,* 27 Wis. 427; *Lynch v. Steamer "Economy,"* 27 Wis. 69.

While we might comment upon the character of this action —that it was brought by an informer who confessed on the trial that it was brought for the purpose of gain, he being of an apoplectic turn and unable for hard work — we intentionally refrain therefrom. But we cannot help calling the court's attention to the fact that on the 24th day of June, 1875, when the railroad company was bringing into the state an excursion of over three hundred editors, at its own expense, for them to ascertain the wealth of Kansas, and to report the same, and while all along the line of this railroad everybody had turned out with welcome, cheer and gladness, the relator, who with his attorneys represents the sovereignty of the state in this case, crouched in the fence-corner taking notes that we did not then ring a bell.

*Ruggles, Scott & Lynn,* for defendant in error:

1. The second point made by the plaintiff in error, we shall make the first, to wit: Whether that part of § 60, p. 206, Gen. Stat., which gives one-half of the penalty to the informer, is unconstitutional, being in contravention of § 6, art. 6, of the constitution of Kansas, which provides that "the proceeds of fines for any breach of the penal laws shall be exclusively applied . . . to the support of common schools." We think not, for several reasons:

1st. Because the statute in express terms does not make it a *fine,* but a *penalty;* so the act does not, *ex vi termini,* contravene the constitution.

2d. We should construe the word *fine* according to the popular meaning and application. (Story on Const., § 451.) The popular meaning of the word *fine* is a pecuniary punishment imposed by a sentence of a criminal court, and not a judgment in a civil action. Another canon of construction is, that where the same word is used two or more times in a constitution or statute, it must receive the same meaning in every place where used, unless the context shows the meaning to be obviously different. (*Regina v. Comm'rs, etc.,* 6 Ad.

& E., 68, 69; Cooley's Const. Lim., p. 62.) And a constitution must be read in the light of the common law in force at the time of its adoption. (Cooley's Const. Lim., p. 60.)

Section 9 of the bill of rights, contained in the constitution of this state, reads as follows:

"All persons shall be bailable by sufficient sureties, except for capital offenses, where proof is evident, or the presumption great. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."

We claim that the word *"fines"* is here used in its very broadest sense — the same being to protect men's liberty; to prevent their imprisonment for inability to pay a fine. (See Gen. Stat., p. 881, § 17.) For by common law, as well as by statutes of our own state and others, (see Gen. Stat., p. 381, § 294, and 2 Bl. Com. 378, 379,) the amount of fines is very much in the discretion of the court, because a very small sum to a poor man would be an excessive fine, while a good round sum to a wealthy man would be a small fine; and the same remarks are true as to bail. The object of the law in both cases is to allow every man to redeem himself from prison, and to control the discretion of the court to that end. According to the ancient common law, the fine was assessed by persons chosen for such purpose, who always inquired of the criminal's ability to pay. (2 Bl. Com. 376, 380.)

We have said this much for the purpose of calling the court's attention to the fact that the word *fines*, in the bill of rights, both in England and this country, means a pecuniary sentence of a criminal court for some offense against the criminal laws, usually misdemeanors, where the defendant has been arrested at the suit of the state, (Gen. Stat., pp. 820, 821, §§ 3, 4, 5, 6, and p. 384, § 310,) committed or admitted to bail, (pp. 827, 828, §§ 41, 47,) and brought to trial according to the course of criminal procedure, and on conviction sentenced to pay a fine and costs, and stand committed until the same are paid. For it never could happen that "excessive bail" might be required, or "excessive fines" imposed, or "cruel

or unusual punishment" inflicted in a civil action; for where bail is required, the amount of the debt fixes the bail, and the debt fixes the amount of the judgment; so there is no room for "excessive fines" or "cruel punishment." Neither can a man be imprisoned where the statute fixes the amount of the defendant's liability, and provides for the recovery of the same, by a *civil* remedy only, for there an execution is the end of the law. *Hitchcock v. Munger*, 15 N. H. 103. See, also, Cooley's Const. Lim., pp. 328, 330; Story on Const., § 1903; 2 Bl. Com., pp.*378, 380.

3d. If we are right in this, what reason is there for holding that "*fines*," in § 6, art. 6, has any different meaning? The words are the same, and, as we have shown, should be construed to mean the same, unless there be some good reason to the contrary. At common law, all *fines* went into the exchequer, while forfeitures, most generally, when recoverable in a civil suit, went half to the informer (2 Bl. Com.*160, 161); and is it not reasonable to believe that the framers of our constitution intended them to go the same way? What at common law went to the exchequer exclusively, was to be devoted to education. Our legislature has so construed the law, and its opinion is entitled to some weight. (Gen. Stat., p: 873, § 332.)

4th. Then, again, at common law a *fine* was never recoverable in a civil action at all, it being neither *tort* nor *contract* upon which a civil action could be based. Penalties which were forfeitures were recoverable as on contracts, but penalties which were fines were not, *penalty* being a generic term covering the whole catalogue of punishments. Blackstone treats forfeitures as contracts. (2 Bl. Com.*158, 161.)

5th. The word "fines" does not include penalties or forfeitures, and the money sought to be recovered in this case is either a forfeiture, or a penalty in the nature of a forfeiture, or it is without a name—it is not a *fine*. Fines are *imposed* by the courts; forfeitures and penalties are *incurred* from some neglect of a duty commanded or prohibited. Forfeitures and penalties are sometimes pecuniary, and sometimes

not; fines are always pecuniary. "Excessive fines shall not be *imposed*," is the language of § 9, bill of rights. "Imposed" here means upon the *accused*, not upon the *offense*. A fine is always imposed upon the defendant, and it is a wrong use of language to say that the law imposes a fine upon an offense which has never yet been committed. The law prescribes what the court shall impose upon the criminal who violates the law. If this be a fine, it is a fine imposed by the legislature upon the offense before it is committed. No one ever speaks of *incurring* a fine; yet in this very case the liability of the railroad company was "incurred," not "imposed." The company ran into it; it was not placed upon it—as the etymology of the two words would indicate. (See Burrill's Law Dict., and Bouvier's; Webster's Dict., and Worcester's; and the words "fine," "forfeiture," and "penalty," in Crabb's Synonymes.)

6th. But it may be argued that the Wisconsin case cited by the plaintiff in error does not make this distinction between a fine and penalty or forfeiture. The answer to this is, that no such question was raised, and that court, in the very opinion relied on, does not feel bound by any decision wherein a point might have been raised and was not.

7th. But then, again, if this sum is a forfeiture, it might be argued that the word "fines" will cover it. To this we answer, that forfeitures are of specific real or personal property, as well as pecuniary. Then, suppose that the statute in question had provided that the steam engine that passed over the crossing, and failed to ring or whistle, should become the property of the informer, who should sue for the same, something like the ancient deodand, would such a law be repugnant to this § 6, art. 6 ? We think not, surely, for the language is, "Shall be exclusively applied in the several counties in which the money is paid or fines collected." Now, this word "collected" certainly means money collected, for we cannot say with any sense that lands or chattels are collected of any one.

Then, if specific property forfeited is not covered by the word "fine," how can we say that money forfeited is covered by fines? It cannot be so said with any degree of propriety, unless the words, "fine," and "pecuniary forfeiture," are one and the same in meaning, which nobody so understands. We find all through our statutes the words, "fines," "penalties," and "forfeitures," used concerning pecuniary sums for which parties are made liable. (Dassler's Stat., §§ 63, 64, 358, 575, 2234, 2236, 2238, 2244, 4514, 4570, 5259, 5260, 5261.)

So it is with some of the constitutions of the different states providing for a school fund: "From fines assessed for breach of the penal laws of the state, and from all forfeitures which may accrue." (Const. Ind., art. 8, § 2.) "All fines and forfeitures that may hereafter accrue," etc. (Const. Mo., art. 6, § 4.) The Indiana constitution uses correct language. It says, "fines assessed," and "forfeitures accrued." We never say of criminal cases, that they accrue, but always of civil actions, and we always speak of assessing fines or punishment.

8th. A careful examination of the digests and text-books on pleading has convinced us that "fines," both in England and America, were never recoverable in a civil action; that the word is used only in connection with punishments for crime, and that penalties and forfeitures were always recoverable in a civil action, and that when a sum of money was recoverable in a civil action for a breach of the penal laws, it was always called a penalty or forfeiture. As long ago as 1789, congress had occasion to use the words in such a way as to show beyond doubt what was understood by the terms in that day. In conferring jurisdiction on the district courts of the United States (Rev. Stat. U. S., p. 94, § 563), the following language is used in speaking of the cases in which the courts shall have jurisdiction: "Of all suits for penalties and forfeitures incurred under any law of the United States." Now, why was not the word *fines* used? Simply, because *fines*, as congress understood the term, had nothing to do

with a civil suit, and it had given the court full jurisdiction as to *fines* when it gave the court cognizance "of all crimes and offenses."

There are very few authorities on this question, but we think that the following show what the courts understood by "fines" and "penal laws" in this connection: *Wayne Co. v. Detroit*, 17 Mich. 390; *Taylor v. United States*, 3 How. 210; *People v. Sturns*, 13 Wend. 341. This last case decides that a recovery in this action would be no bar to a criminal action. All this has been said to show that *pecuniary penalties*, recoverable in a civil action, were never understood to be fines which belong to criminal jurisdiction. As we think we have shown that this law is not in contravention of § 6, art. 6 of the constitution, either in letter or meaning, we now claim it is not the business of courts to grope around for the spirit, for the legislature is just as competent to judge of the spirit as the court. (*Gilchrist v. Schmidling*, 12 Kas., 271.) If this money ought all to go to the school fund, we claim that the penalty added for failure to pay taxes ought to go there too. (Gen. Stat., p. 1045, § 79; Laws 1876, ch. 34, § 31.)

9th. But even if the court should be against us on all that precedes, then the supreme court of Wisconsin has not decided our law bad, but on the contrary has sustained a law giving one-half to the informer, and said that the legislature may give away a part to collect the other, and that court does not put the stress on the word "clear" before "proceeds," which the gentlemen have done in their brief; it does not lay any stress upon the word at all. It is not likely that the framers of our constitution intended to do away with a mode for the collection of forfeitures and enforcing salutary police regulations recommended by the experience of a thousand years, and in full practice by the general government and in every state of the Union. Certainly, the framers of our constitution intended by said § 6, art. 6, to *increase* the school revenue, not *diminish* it, but the construction sought n this case will certainly defeat the sole and prime object of the framers, if they ever dreamed of these penalties at all.

Then, besides all this, is it reasonable to suppose the framers of the constitution intended more than to appropriate these funds to school purposes, to be collected in the usual way? They never intended to change the mode of collection. This constitutional provision was not for the purpose of changing the remedy for collection, but to appropriate the usual "proceeds" of fines. It has often been decided that "due process" of law means such process as existed at the time the constitution was adopted. Now, in appropriating the "proceeds" of all "fines," did they not intend the proceeds collected as usual, or was this made to cut off the reward of informers?

2. The first point made by counsel for plaintiff is, that this suit was improperly brought, because "no private person or attorney has any right or authority to use the name of the state of Kansas to recover a penalty." If this point and the argument of counsel thereunder are of any legal force, then we have this condition of things: 1st. A duty imposed by statute upon railroad companies, for the purpose of protection and safety to citizens. 2d. A penalty prescribed for a disregard of said duty, but no person or authority designated or permitted to enforce this duty or recover the penalty. Under the provisions of § 60, ch. 23, Gen. Stat., the state has not the slightest interest in this penalty, for no part of it goes into or can go into the state treasury. The failure to perform the duty imposed is nowhere in the statutes made a misdemeanor, nor an "offense," within the meaning of that term in our criminal code, and hence the state cannot enforce this duty through the operation of its criminal procedure. Having no interest in the penalty, it cannot sue in a civil action for its recovery. This section provides that one-half of the penalty shall go to the informer, and the other half to the county for the support of common schools. And the argument which prevents the informer from instituting suit is equally potent to shut out the county, and to prevent a county attorney from moving in the matter. Our view is, that under the provisions of this section either of the parties

to whom the penalty goes could have sued in his or its own name; and in this we are sustained by the supreme court of Illinois, passing upon a provision similar to this except as to the division of the penalty, the *state* in Illinois taking the share that here goes to the county. (*C. & A. R. R. Co. v. Howard*, 38 Ill. 414.)

We have carefully examined the cases decided by this court referred to in the argument of plaintiff in error, and from the opinions therein which counsel have so largely quoted, and we cannot discover that these cases decide that no private person can ever use the name of the state in a civil action. That this court never intended to so decide, we are firmly convinced, not only from the decisions made, but also because the legislature has in some cases clearly authorized a private person to use the name of the state. See Laws 1871, ch. 79, § 4; Gen. Stat., ch. 47, p. 516, § 3.

The fact that § 62, ch. 23, does not in express terms say that the penalties imposed by § 60 may be sued for in the name of the state, on the relation of the informer, does not, we think, militate against our view of this case, nor indicate that it *must* be brought by the county attorney, because we find that in all this class of cases, when the legislature has intended that the action should be commenced and prosecuted by the county attorney and no one else, it has expressly said so. (See Laws 1871, ch. 93, § 22; Laws 1876, ch. 60.) And we find that even in cases where the state is the real party in interest, the legislature has authorized suits to be brought in the name of some other person or corporation. (Laws 1876, ch. 34, § 77.)

While we appreciate, as much as anyone can, the generous efforts of this railroad company to enable "over three hundred editors, at its own expense," to ascertain the wealth of Kansas, and to aid itself in the disposal of thousands of broad acres generously donated to it by the public, at good prices, yet "we cannot help calling the court's attention to the fact," that the evidence before this court shows, and the verdict of the jury in this case establishes, that the employés

of this company have recklessly and persistently violated a statute of the state, enacted, not for the benefit of the company, or of "over three hundred" dead-head excursionists, but for the protection and safety of citizens and others, who, like the relator and his family, are compelled to cross a track endangered by swiftly-moving engines and trains.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought and prosecuted by Marion Sanders, in the name of the state of Kansas, against the Atchison, Topeka & Santa Fé Railroad Company, for 207 alleged violations of the act of the legislature (Gen. Stat. 206, § 60) requiring railroad companies to ring a bell or sound a whistle at each crossing of every traveled public road or street. Sanders prayed for a judgment for $20 for each of said violations, or for $4,140 in the aggregate — one-half thereof for himself, and the other half thereof to be paid to Lyon county for the use and benefit of the public-school fund, and for costs. He obtained judgment in the court below in his favor and against the railroad company for $1,680, one-half thereof to be paid to himself, and the other half to be paid to the county treasurer of Lyon county for the support of common schools, and for costs. The railroad company then claimed, and it now claims, that said judgment was and is erroneous, and now seeks in this court to have the same reversed. Many questions are raised and presented to this court, some of which relate only to mere questions of practice, but others thereof go to the very foundation upon which Sanders's supposed right of recovery rests. At the very threshold of the controversy, the railroad company denies Sanders's supposed right to recover. It claims that even if it did violate said act, by failing to ring a bell or sound a whistle at some traveled public road or street-crossing, still, that the entire penalty imposed for such violation must necessarily be applied, under § 6 of article 6 of the constitution, to the support of common schools, and that not one cent thereof can be given to Marion Sanders; and, therefore,

that as he can have no possible interest in the subject-matter of the action different from that of the rest of the community, and that as he is not a public prosecutor, he cannot maintain the action. *State v. Anderson*, 5 Kas. 90, 116; *Craft v. Jackson Co.*, 5 Kas. 518; *Bobbett v. Dresher*, 10 Kas. 9; *Turner v. Jefferson Co.*, 10 Kas. 16; *Bridge Co. v. Wyandotte*, 10 Kas. 326; *State v. Jefferson Co.*, 11 Kas. 66; *Miller v. Palermo*, 12 Kas. 14; *State v. McLaughlin*, 15 Kas. 228, 233; *Crowell v. Ward*, 16 Kas. 60, 62; *Center Township v. Hunt*, 16 Kas. 430, 439. The railroad company also claims that, as the action has not been nor is it now prosecuted by any public prosecutor, the action must abate. (See authorities above cited.) Among the statutes necessary to be considered for the correct determination of this case are the following, to wit:

"SEC. 60. A bell shall be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and be kept ringing until such crossing shall have been passed; or a steam whistle shall be attached to each locomotive engine, and be sounded at least eighty rods from the place where the railroad shall cross any such road or street, except in cities, and shall be sounded at intervals until it shall have crossed such road or street, under a penalty of twenty dollars for every neglect of the provisions of this section, to be paid by the corporation owning the railway, one-half thereof to go to the informer, and the other half to the county for the support of common schools; and the corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect." (Gen. Stat. 206.)

"SEC. 62. All penalties imposed upon railway corporations by this or any other act, may be sued for in the name of the state of Kansas, and if such penalty be for a sum not exceeding three hundred dollars, then such suit may be brought before a justice of the peace of the county in which the penalty accrued, and may be commenced by serving a summons on any officer or agent of such company found within the state." (Gen. Stat. 206.)

"SEC. 307. Whenever any fine, penalty or forfeiture is or may be inflicted by any statute of this state for any offense, the same may be recovered by indictment (except as in the

next section is provided), notwithstanding another or different remedy for the recovery of the same may be specified in the act imposing the fine, penalty or forfeiture: *Provided,* That in all cases the fine, penalty or forfeiture shall go to the state, county, corporation, person or persons to whom the act imposing the same declares it shall accrue." (Gen. Stat. 383.)

Said constitutional provision reads as follows:

"SEC. 6. All money which shall be paid by persons as an equivalent for exemption from military duty; the clear proceeds of estrays, ownership of which shall vest in the taker-up; and the proceeds of fines for any breach of the penal laws, shall be exclusively applied, in the several counties in which the money is paid or fines collected, to the support of common schools." (Kas. Const., art. 6, § 6.)

The words "fine," "penalty" and "forfeiture" are not defined by any statute of this state; but the word "offense" is. The word "offense" means "any offense, as well misdemeanor as felony, for which any punishment by imprisonment or fine, or both, may by law be inflicted." (Gen. Stat. 1868, p. 384, § 310; Laws of 1859, in force from 1859 to 1868, p. 287, § 303.) It also means "any act or omission for which the laws of this state prescribe a punishment." (Gen. Stat. 820, § 2.) But counsel differ mostly as to the correct signification of the word "fine." The constitution provides that "the proceeds of *fines* for any breach of the penal laws shall be exclusively applied" "to the support of common schools." "The *proceeds* of fines" mean, of course, the *moneys collected* from fines, the *amounts realized* from fines, and just such amounts, no more and no less. "The *proceeds* of fines" evidently mean *all* the proceeds, not merely the *clear* proceeds; not a portion thereof, but all. While the constitution in one clause of said § 6 provides that only "the *clear* proceeds of estrays" shall be devoted to schools, yet it, in the clause we are now considering, provides that "the proceeds of fines" shall be so devoted. And it provides that they shall be "exclusively" so devoted, thereby leaving no possible room for any portion thereof to be applied elsewhere, or for any other purposes, or for any mere informer to receive any portion thereof. But counsel for Sanders

claim that the "penalties imposed" for breaches of the present penal statute are not "*fines*" under said § 6, art. 6 of the constitution, and they favor us with a learned and elaborate disquisition concerning the meaning of the words "fine," "penalty," "forfeiture," etc. They are probably generally correct, but still we think they attempt to limit the significa-tion of the word "fine" within too narrow a compass. Even in its legal sense, the word is rather comprehensive. It means, among other things, "a sum of money paid at the *end*, to make an *end* of a transaction, suit or prosecution; mulct; penalty." (Webster's Dict.; Richardson's Dict.) In ordinary legal language, however, it means a sum of money imposed by a court according to law, as a punishment for the breach of some penal statute. In the present case, we think the penalty imposed is clearly a fine. It is imposed, not as a compensation for some loss sustained, not as damages, not as interest and not as costs, but merely as a punishment for the breach of a penal statute. The words "penal laws," as used in the constitution, evidently mean laws for the breach of which a *penalty* is imposed, and if this penalty is imposed *merely as punishment,* the penalty is a fine. The legislature may give *damages* wherever *loss* has been sustained. It may even give enhanced damages, double damages, treble dam-ages, exemplary damages, and remote as well as proximate damages, but these are all *damages* because of *loss* sustained, and not merely punishment for some breach of the penal laws. It has often been questioned, however, whether the legislature could give as damages more than mere compensa-tion for the loss sustained. If it were a new question, the courts would probably at the present day hold that the legis-lature could not do so. The legislature may also give costs, such as officer's fees, witness fees, attorney's fees, etc., but these are also given as compensation for loss. The legisla-ture may also give interest, or enhanced damages or penal-ties, in the nature of interest, but this is also done upon the principle of giving compensation for loss. In all cases where money is imposed merely as punishment for the violation of

some law, we think the imposition of such money should be called a fine.

Counsel for Sanders seem to contend that the penalty imposed in the present case is not a fine, because it is not imposed in a criminal action, but is imposed in a civil action. It is true that the present action is in form a civil action, and without stopping to inquire whether it is rightfully so or not, we would say that we think it can make no difference whether we call it civil or criminal. It is actually prosecuted in the name of the state of Kansas as a punishment for a breach of a penal statute; and it might have been prosecuted in form as a criminal action. (See said section 307, Gen. Stat. 383.) Besides, courts look to the substance of things, and not to mere forms. This is especially true when construing great and important constitutional provisions. The procedure for the trial of causes is a very unimportant thing in determining the nature and character of such causes. The legislature might change the procedure for the trial of cases of murder in the first degree, or for any other crime, so as to make such procedure similar in almost all respects to that for the trial of civil actions, and might call such action a civil action; and yet, by merely so changing the procedure and the name of the action, (not changing the punishment,) it could not deprive the defendant of his *right* under the constitution to a trial by jury, to meet the witnesses face to face, to be tried in the county or district where the offense was committed, or to refrain from being a witness against himself. The offense would still be a criminal offense under the constitution, whatever the procedure, or whatever the offense might be called.

As throwing some light upon the present case, see *Lynch v. The Steamer "Economy,"* 27 Wis. 69, and *Dutton v. Fowler,* 27 Wis. 427. These cases hold that, under the Wisconsin constitution, which sets apart for the school fund "the *clear proceeds* of all *fines* collected in the several counties for any breach of the penal laws," all such "clear proceeds," whatever they may be, must be so set apart. "The entire *penalty* cannot be given to the informer," and any act of the legisla-

ture which disposes of the entire *penalty* imposed for a breach
of the penal laws in any other manner than by giving the
"clear proceeds" thereof to the school fund is unconstitu-
tional and void; and it seems to make no difference in whose
name or under what procedure the action may be prosecuted,
or whether the penalty is called a fine or merely a penalty.
A *penalty* for a breach of "*the penal laws*" is a *fine,* and
it must go where the constitution says it shall go. · Hence,
when our constitution says that "the proceeds of fines for
any breach of the *penal laws* shall be *exclusively* applied"
"to the support of common schools," it means that *all* the
proceeds of *penalties* imposed as punishment for a breach of
a penal statute (and not imposed as *damages* where loss has
been sustained) shall be *exclusively* applied to the support of
common schools, and that no portion thereof can be given to
a mere informer; hence, said act, or any acts of the legisla-
ture which give to an informer who has sustained no loss
one-half of the proceeds of such a penalty, is unconstitu-
tional and void.

All the Justices concurring.