This action was before us upon complaint and demurrer at February Term, 1901 (128 N.C. 249). It was then decided that the plaintiff was entitled to maintain the action for the recovery of the fines collected by the defendant in the manner set forth in the complaint. The cause was thereupon referred for the purpose of ascertaining the amount of fines collected, etc. Upon the filing of the report the plaintiff moved for judgment for the amount found to be due by the referee. Defendant resisted the motion, etc. Judgment was rendered as set forth in the record. Defendant excepted and appealed. The defendant's counsel in their well considered brief thus state its contention: "This appeal involves the power of the Legislature of North Carolina to appropriate all or any part of its fines — as distinguished from penalties — arising from the violation of the ordinances of the city of Asheville, to said city," etc. The appellant also insists that each fine as collected by the city is properly the subject of a separate (505) action, and that notice should have been given of each claim before suit brought. That it appearing that each fine was less than $200, the Superior Court had no jurisdiction, etc. The plaintiff contends that the question presented upon this appeal has been expressly decided in this cause as reported in 128 N.C. 249; that the decision therein rendered is the "law of the case" and not open to further litigation. It is not contended that any such judgment has been rendered in the cause as will work an estoppel of record, or bring the case within the operation of the principles of res judicata. That a final judgment rendered upon a demurrer which is directed to and involves the merits of the controversy works an estoppel upon parties and privies is settled by several decisions of this Court. The principle is thus stated in 6 Enc. Pl. and Pr., 356: "When a demurrer goes to the merits of the action, judgment sustaining it is conclusive upon the parties and will bar another action for the same cause, but when it goes only to matters of form it does not have this effect."Johnson v. Pate, 90 N.C. 334; Willoughby v. Stevens, 132 N.C. 254. We are not prepared to hold that in this or a *Page 372 
similar case we may not, before final judgment, review our former decision upon a demurrer and, if found erroneous, correct our mistake. The limitations by which courts of appeal are bound by "the law of the case" are not clearly defined. Certainly, when no rights of property have become vested or change made in the status of the parties by reason of a ruling at some former state of the litigation, a court should not be concluded from reviewing itself and correcting its errors. While we think this the correct view in any case, there would seem to be no doubt of our duty in a case involving the construction of the Constitution. No one can have a vested right in the decision of a constitutional question. We cannot very well see how the Supreme Court can, (506) before the case has gone to final judgment, be estopped by "the law of the case" to discharge its duty to declare the law. A very different question is presented when a final judgment has been rendered and the case has passed beyond its control. The principle upon which the matter in controversy becomes fixed does not grow out of the idea that the court is concluded, but that the parties are estopped to again litigate the question because it is res judicata. We are referred by counsel to Hasting v. Foxworthy, 45 Neb. 676, in which the foundations of the doctrine are traced and its limitations pointed out. We concur in the views expressed and the conclusions reached by the Court as stated in the opinion by Irvine, J.: "The cause having been remanded generally, there was no adjudication of any rights between the parties; that the record presents the questions upon this trial as well as upon the others and that it is within the power of the Court to reexamine its former decisions and apply the law correctly. We think that ordinarily the Court is justified in refusing to reexamine the questions of law once passed upon, and that it is only when it clearly appears that the former decision was erroneous that this should be done." If this record presented the conditions stated, we should find no difficulty in performing our duty to render such judgment as in our opinion is in accordance with the Constitution and laws of the State. We also concur in the opinion that when the question has been considered and decided the Court will not reverse its former decisions unless it clearly appears that it is erroneous. The considerations which guide and control the Court in this respect are obvious. While this Court has in four cases by unanimous opinions decided the very question now presented and debated, we recognize the fact that both plaintiff and defendant are public governmental agencies seeking to discharge their duty in (507) respect to these funds and are prompted by no other consideration in asking a reconsideration of our former decisions. We are quite sure that the defendant, representing the interest of the city of Asheville, acting under the advice of learned counsel, has no other *Page 373 
purpose than to present in the strongest possible view the argument sustaining its contention that the funds in controversy should go into the treasury of the city of Asheville. The argument made before us is entitled to and has received the most careful consideration. After an examination of the opinions written in Board of Education v. Henderson, 126 N.C. 689;School Directors v. Asheville, 128 N.C. 249; Bearden v. Fullam,129 N.C. 477, we are not prepared to say that the construction put upon Article IX, section 5, of the Constitution is not correct. In Board ofEducation v. Greenville, 132 N.C. 4, the sole question was the statute of limitations. It must be conceded that the language of Article IX, section 5, is not so clear as might be desired.
This Court in Katzenstein v. R. R., 84 N.C. 688, first discussed the power of the Legislature to give to informers the entire penalty incurred for the violation of a statutory duty. Mr. Justice Ashe says: "There is a distinction between those penalties that accrue to the State and those that are given to the person aggrieved, or such as may sue for the same, and no doubt this distinction was in contemplation of the framers of the Constitution when they adopted that section." The learned justice concludes that it is within the power of the Legislature to give to the person aggrieved, or to the person who will sue for the same, the entire penalty incurred. This construction of the Constitution has been accepted and followed both by this Court and the Legislature since 1881. Hodge v. R. R., 108 N.C. 24. Mr. Justice Avery in a concurring opinion expresses his dissent from the conclusion reached inKatzenstein's case. Certainly, much may be said to sustain his view. The question was again fully considered by the Court in Suttonv. Phillips, 116 N.C. 502, and the decision in Katzenstein's case (508) approved. Faircloth, C. J., and Avery, J., dissenting. The defendant does not question these decisions; on the contrary, it insists that they are correct and that the Legislature has the power to appropriate to a municipal corporation a portion, or all, of the fines collected, etc., in the same manner and to the same extent as penalties. The question has been fully considered by this Court and its conclusions uniformly adhered to.
We have examined the arguments and authorities upon which the decisions are based. Without intending to be critical, we think the question stated in defendant's brief is not strictly accurate. It is said: "This appeal involves the power of the Legislature to appropriate all or any part of fines — as distinguished from penalties — arising from the violations of ordinances of the city of Asheville, to the said city." For the reasons we will undertake to give, the question presented is, Has the Legislature the power to appropriate all or any of the fines imposed upon conviction of misdemeanors committed by violating the ordinances *Page 374 
of the city of Asheville? We think the argument to a very large extent hinges upon the different ways of stating the question. While there is much force in the defendant's contention, it is difficult to conclude that the authors of the Constitution intended that fines imposed in criminal prosecutions could be appropriated to private citizens or municipal corporations. The argument, if sound, leads to the conclusion that the Legislature may give to private prosecutors a portion or all of the fines imposed and collected as a punishment for offenses against the criminal law. It is settled that the Legislature may give to cities and towns the entire penalty incurred for the violation of ordinances to be recovered in a civil action, but when the State interposes and declares the violation of an ordinance a misdemeanor, the fine imposed (509) for the criminal offense must go in the way directed by the Constitution. The town may, under its authority to make and enforce ordinances for its better government, enforce such ordinances by the imposition and collection of penalties. It has no power to impose fines, and although in many instances the word fine is used, it is but a penalty, to be recovered, as other penalties, by a civil action. Code, sec. 3804. Prior to the act of 1871, Code, sec. 3820, there was no other way provided for the enforcement of obedience to town ordinances; a violation of such ordinances was not a misdemeanor. S. v. Parker, 75 N.C. 249. In Wilmington v. Davis 63 N.C. 582, it was held that the special courts authorized to be created by the Legislature by section 14, Article IV, had no jurisdiction to try an action for the recovery of a penalty imposed for the violation of a town ordinance. The power of the mayor or other chief officer of a town to hear and determine a criminal action is derived from section 3818 of The Code, by which he is constituted an inferior court to be called a municipal court. He is made a magistrate and conservator of the peace, and within the corporate limits of any city or town given the jurisdiction of a justice of the peace in all criminal matters arising under the laws of the State, or under the ordinances of the town. In imposing fines for misdemeanors, whether committed by violating an ordinance or any other criminal law, he has the same power and jurisdiction as, and concurrent with, a justice of the peace in such town. It is therefore not accurate to say that fines imposed by him are for the enforcement of a town ordinance or punishment for the violation of a town ordinance is made a misdemeanor. The warrant runs against the form of the statute and the peace and dignity of the State. S. v. Taylor, 133 N.C. 755. It is held that a justice of (510) the peace has concurrent jurisdiction of a charge of violating a town ordinance, because it is a misdemeanor. S. v. Merritt,83 N.C. 677. A party violating a town ordinance may be prosecuted by *Page 375 
the State for the misdemeanor and sued by the town for the penalty. S. v.Taylor, supra. We can see no more reason why it should be competent for the Legislature to give to the town all or a part of the fine imposed for a misdemeanor committed by violating a town ordinance, than for a misdemeanor committed by violating any other criminal law of the State. A fine imposed for an assault, or for retailing without license, or any other misdemeanor, committed within the corporate limits, cannot be distinguished, in respect to the power of the Legislature to appropriate or give it, or any part of it, to the town, from a like fine imposed for a misdemeanor committed by violating a town ordinance. Nor can we see why, if the fine or any part of it may be given to the town, it may not by the same power be given to the prosecutor, or to any private citizen. When the power is conceded, we find no limit to its exercise save the wisdom of the legislative department of the Government. If we found the power in the Constitution we should not hesitate to so declare; it is not our province to construe it out of the organic law because of any supposed apprehension on our part that it might be abused. When, however, the language of the Constitution or meaning thereof is doubtful, and a general purpose is indicated in respect to the matter in controversy, it is not only legitimate, but our duty, to test the strength of the argument by looking to its practical effects and ascertain how the general purpose may be affected by adopting the proposed conclusion.
Judge Ashe draws the distinction between "those penalties that accrue to the State and those that are given to the person aggrieved." This distinction is recognized in Hodge v. R. R., supra. We should be slow to conclude that it was intended that fines imposed for violation (511) of the criminal laws which accrue to the State could be distributed among or appropriated to objects other than those named in the Constitution.
It is conceded that but for the word "of," between the words "and" and "all," no doubt could be entertained that "all fines" were given to the school fund. An analysis of the entire sentence indicates a purpose on the part of the draftsman to make a distinction between "penalties and forfeitures" and "fines" and to group them into separate classes — "the clear proceeds of all penalties and forfeitures, and of all fines," etc. Why insert the conjunction between "penalties" and "forfeitures," and again between these two and "fines," if they were included in one class? It is true that the word "of" leaves the entire sentence obscure and open to construction. It may be that, as suggested by Judge Ashe, "If it was intended to give the school fund all penalties, as well those that belong to the State as those that are given to the party aggrieved or common informer, then the statutes giving penalties in both cases would *Page 376 
be a `dead letter.'" It is common custom to give either, all, or a part of penalties to the person aggrieved or any person who will sue for the same, whereas it would introduce a novelty into our law to distribute a fine imposed for the violation of the criminal law and bring many strange and dangerous innovations into our criminal jurisprudence. The able counsel for the defendant says that if this Court will define "clear proceeds" the difficulty will be cleared up. If we adopt the argument of counsel, we must hold that fines are in the same class as penalties, and, followingKatzenstein's case, we would be forced to the conclusion that the disposition of both are entirely within the power of the Legislature, which nullifies the clearly expressed purpose of the people, that they shall go into the county school fund. If we stop short of this conclusion and limit the words "clear proceeds" to the power to dispose of only a part of the fine, we might well say that the power (512) of the Legislature is exhausted by giving to the clerk or sheriff a reasonable commission for collecting the fines — to be deducted from the amount before paying it over to the treasurer of the school fund. The words "clear proceeds" could thus have full force and operation without giving the unlimited power claimed by the defendant. By reference to section 3739 of The Code, regulating the fees of the clerk, we find that he is given "5 per cent commission on all fines, penalties, amercements, and taxes paid to him by virtue of his office." We might well conclude that the 95 per cent of the fines constitutes the "clear proceeds," and that this, or such other reasonable commission as should be fixed, exhausted the power of the Legislature to appropriate the amount so collected and was in the contemplation of the draftsman in using the term "clear proceeds" as applied to fines.
The defendant's counsel strongly urges upon us the hardship visited upon cities and towns by the decisions made by this Court. They say that they have been deprived of an important source of revenue. This condition has resulted from the fact that they have been heretofore appropriating these fines, and we fully recognize the hardship imposed by requiring the payment. This Court, beginning in the Henderson case, held that no statute of limitations protected them; it now holds that they cannot be called upon to account for amounts collected beyond two years. Board of Education v.Greenville, supra. We presume that a large majority of the towns have acquiesced in the decisions and made settlement with the boards of education. However this may be, we must declare our conclusion as we reach it. While the fines collected for violations of the criminal laws in the city of Asheville will not in the future go into the general treasure of the city, they will contribute to the support of her splendid system of public schools, which reflect so much credit upon the wisdom and foresight of her citizens. *Page 377 
It is a wise policy to apply the fines imposed for the (513) commission of crimes to one of the most useful and valuable agencies for the prevention of crimes — the public schools — whereby the children of the State are educated to obey the law and strengthen the commonwealth.
The judgment of the Superior Court must be
Affirmed.
Cited: S. v. Maultsby, 139 N.C. 585; S. v. Holloman, ib., 648; S. v.R. R., 145 N.C. 553; S. v. Oil Co., 154 N.C. 638.