STATE and NORA WILKES v. JAMES ADDINGTON.

(Filed May 22, 1907).

*Bastardy—Child Born Dead—Fine—House of Correction—County Commissioners—Right to Hire Out Defendant—Imprisonment—Police Regulation.*

1. A proceeding in bastardy is of a civil nature, not a criminal prosecution, and intended merely for the enforcement of a police regulation.

2. The intent of the Legislature, Revisal, sec. 259, in the use of the word "fine" was in the sense of a punishment for a criminal offense, and such cannot be imposed by the Court in proceedings in bastardy when the jury finds the issue of paternity against the defendant.

3. Under Revisal, sec. 262, the Court has no jurisdiction to enforce its order of "support" by committing the defendant "to the house

of correction, to-wit, the common jail, with authority of the Com-
missioners to have him work on the public roads, allowing the sum
of ten dollars a month for his labor, to be paid into the Court for
the use of the *feme* plaintiff and paid to her in satisfaction of
the said allowance." When there is no house of correction in the
county, the Court can only commit him to jail until the perform-
ance of the order of support.

4. Under Revisal, sec. 259, the intention is to secure to the mother
either her probable expenses or to reimburse her actual outlay,
and the death of the child when born does not affect the right
of the mother to "support"; among other things, she is entitled to
pay for medical attention and medicine for herself, and the
burial expenses of the child, consequent upon the defendant's
unlawful act. Revisal, secs. 253 and 254.

BASTARDY PROCEEDING, commenced before a justice of the
peace and tried on appeal by his Honor, *Cooke, J.,* and a jury,
at February Term, 1907, of BUNCOMBE Superior Court.

The evidence tended to show that the *feme* plaintiff had
been delivered of a bastard, which had passed through the
full period of gestation, but was born dead. It further
tended to show that the defendant was thirty-eight years of
age and the mother of the child sixteen years old; that she
was sick for several weeks before and for several weeks after
her confinement, and all the time was under the care of a
physician; that she supplied herself with medicines and
paid the child's burial expenses.

The defendant moved to dismiss the proceeding upon the
ground that it will not lie where the child was still-born.
He also requested the Court to charge the jury that the issue,
"Is the defendant the father of the bastard child begotten
upon the plaintiff?" should be answered "No," for the
reason that no child had been born alive for the defendant
to support. Both the motion and the prayer for this instruc-
tion being refused, the defendant excepted. The jury found
the issue in favor of the plaintiffs, and the Court, thereupon,
adjudged that the defendant pay a fine of one dollar, an

allowance to the *feme* plaintiff of forty dollars, and the costs, and "in default of such payment the defendant was sentenced and committed to the house of correction, to-wit, the common jail of Buncombe County, for the term of six months, with authority to the County Commissioners to have him to do work on the public roads of the county, the sum of ten dollars per month to be allowed for his labor, which shall be paid into Court for the use of the *feme* plaintiff, and paid to her in satisfaction of the said allowance and the fine and costs." The defendant excepted to the judgment and appealed.

*R. S. McCall* for defendant.
*Assistant Attorney-General, Frank Carter* and *H. C. Chedester, contra.*

WALKER, J., after stating the case: This Court in two recent decisions has finally determined the nature of this proceeding. It has been adjudged to be civil and not criminal in its nature, and is intended merely for the enforcement of a police regulation. *State v. Liles,* 134 N. C., 735. It being in the nature of a civil proceeding, and the issue of paternity being tried according to the rules of evidence and procedure applicable to such a proceeding (*State v. Edwards,* 110 N. C., 511), a mere finding of the issue against the defendant, that is, that he is the father of the child, would not authorize the imposition of a fine, which is a pecuniary punishment for a criminal offense, or a contempt (which is *quasi*-criminal), imposed by the Court upon conviction. *State v. Burton,* 113 N. C., 655; 13 Am. and Eng. Enc. (2 Ed.), 53.

It is true the word "fine" does not always mean a pecuniary punishment of an offense inflicted by a court in the exercise of criminal jurisdiction. It has other meanings,

and may include a forfeiture, or a penalty recoverable by civil action. *People v. Nedrow,* 122 Ill., 363; *Hanscombe v. Russell,* 11 Gray (77 Mass.), 373; *Railroad Co. v. State,* 22 Kan., 1; Black's Dict., p. 494; 13 Am. and Eng. Enc., *supra.* The true signification of the word when used in a statute must depend somewhat upon the context, and the meaning should be gathered from the intention, if the latter can fairly be ascertained from the language used. In ordinary legal phraseology, it is said, the term "fine" means a sum of money exacted of a person guilty of a misdemeanor, or a crime, the amount of which may be fixed by law or left in the discretion of the Court, while a penalty is a sum of money exacted by way of punishment for doing some act which is prohibited, or omitting to do something which is required to be done. *Village of Lancaster v. Richardson,* 4 Lansing (N. Y.), 136; 13 Am. and Eng. Enc., *supra,* and notes. While the words "fine" and "penalty" are often used interchangeably to designate the same thing, we think it will accord more with the true intention of the Legislature if we hold that in the Act of 1879, ch. 92 (Rev., sec. 259), the word "fine" was used in the sense of punishment for a criminal offense. In the first place, the amount is not fixed or certain, which is the general characteristic of a fine, but not of a penalty, the amount of the latter being certain, though the Legislature might perhaps impose a penalty of uncertain amount. *Commissioners v. Harris,* 52 N. C., 281; *State v. Cainan,* 94 N. C., 883; *State v. Crenshaw,* 94 N. C., 877; *State v. Rice,* 97 N. C., 421. In the second place, the statute requires that the defendant shall be committed in default of the payment of the fine, and lastly, this Court has so construed the statute in former decisions. *State v. Burton,* 113 N. C., 655; *State v. Cagle,* 114 N. C., 835; *Myers v. Stafford, ibid.,* 231; *State v. Wynne,* 116 N. C., 981. This being so, the fine cannot be imposed in a proceeding which

is not criminal, and upon the verdict of a jury, where the issue submitted is tried like those in other civil cases. Otherwise the defendant would be subjected to conviction and punishment as for a criminal offense without the rights and advantages he would have in a trial upon indictment and the plea of not guilty. *State v. Liles,* 134 N. C., at p. 737. Whether this provision of the statute is void and of no effect for the reasons we have given, or whether the fine may be imposed upon conviction in an independent prosecution, we need not decide, as that question is not before us. *State v. Liles,* at p. 741. We only decide that the fine could not be exacted in this proceeding.

Nor could the Court require the defendant to do work upon the public roads. The Revisal, sec. 262, authorizes him to be committed to the house of correction. Whether or not this provision is constitutional we need not say. There is no house of correction in Buncombe County, as appears by the judgment. The Court could only commit him to the jail until he performed its order. It has been held by us that the Legislature did not intend to punish an immoral. or unlawful act, but merely to enforce obedience to the just requirement of the law, that the putative father should provide for the support of his offspring, and save the mother and the county harmless. *State v. Brown,* 46 N. C., 129; *Ward v. Bell,* 52 N. C., 79; *State v. Edwards,* 110 N. C., 511. This question is fully discussed in *State·v. Morgan,* 141 N: C., 726, and the conclusion reached that this part of the judgment is unwarranted. Whether the defendant can take the insolvent debtor's oath is also a question that is not presented.

The other objections of the defendant are untenable. The death of the child at its birth can make no difference as to the right of its mother to institute the proceeding. The statute expressly authorizes the mother to proceed against

the putative father before the child is born, that is, when it is *en ventre sa mere.* Revisal, sec. 253 and 254; *State v. Crouse,* 86 N. C., 617. The Court may continue the proceedings until the birth of the child. Sec. 258. This clearly implies that the proceeding may be commenced during pregnancy. *State v. Wynne,* 116 N. C., 981. The Judge was right in excluding from the judgment an order for a bond of indemnity, as the county, by reason of the fact that the child was dead when born, was not exposed to any charge for its support or maintenance. But the allowance to the mother was properly ordered. The statute simply requires that this allowance shall be made without directing how the money shall be spent. This leaves it discretionary with her as to how she will apply it. She was compelled to pay for medical attention and medicine for herself, and the burial expenses of the child, all consequent upon the defendant's unlawful act. Why should he not be made to reimburse her? It appears from the statute that this allowance could be made before her delivery of the child, if there is no continuance of the trial and the proceeding is then prosecuted to judgment. It is intended to secure to her either probable expenses or to reimburse her actual outlay.

This eliminates the fine and the alternative sentence of imprisonment in the house of correction with direction that the defendant be worked on the public roads. The allowance will stand, and the defendant may be imprisoned in the county jail until he pays it and the costs, or until he is otherwise discharged according to law.

There was error in the judgment of the Court.

Modified.