JULIUS R. CAUBLE v. CITY OF ASHEVILLE

No. 21

(Filed 4 November 1980)

**Penalties § 1; Schools § 1– penalty for violating overtime parking ordinance – fine for breach of State penal law – use for county schools**

  Monies voluntarily paid by motorists to a city upon citations for violations of a city overtime parking ordinance constitute a penalty or fine collected for breach of a State penal law and should be used exclusively for maintaining free public schools in the county pursuant to Art. IX § 7 of the N.C. Constitution, since violation of a city ordinance is also a violation of G.S. 14-4 which makes the violation of a local ordinance a misdemeanor.

  Justice BROCK did not participate in the consideration or decision of this case.

  Justice EXUM dissenting.

  Justice BRITT joins in the dissenting opinion.

On discretionary review to review the decision of the Court of Appeals reported in 45 N.C. App. 152, 263 S.E. 2d 8 (1980), affirming the granting of partial summary judgment by *Bruce, J.,* at the 23 October 1978 Civil Session of BUNCOMBE Superior Court.

This is a class action pursuant to Rule 23 of the North Carolina Rules of Civil Procedure instituted to compel defendant City of Asheville to pay into the Buncombe County School Fund all fines assessed for violations of the ordinance proscribing overtime parking. The essential facts are not in dispute and may be summarized as follows:

Pursuant to statutory authority to regulate parking, G.S. 160A-301, defendant enacted Ordinance 376 which provides:

It shall be unlawful for any person or operator to cause, allow, permit or suffer any vehicle registered in his name,

or under his control, to be parked overtime or beyond the lawful periods of time as above set forth.

Under this ordinance, defendant issued notices or citations for overtime parking and collected penalties for violations of the overtime parking regulations. The parties stipulated as follows:

Under ordinance #376, the City would place a notice on a motor vehicle indicating overtime parking. The individual who received this notice and who complied with the ordinance would deliver the penalty of $1.00 to an administrative clerk at the City's Police Department or would deposit the $1.00 in a receptacle maintained by the City for such purpose.

Under ordinance #914, the City would place a parking citation on a motor vehicle indicating overtime parking. The individual who received this citation and who complied with the ordinance would deliver the appropriate penalty to an administrative clerk in the City Hall Building or would mail same to the City.

Criminal warrants were taken out on occasions against persons who failed to pay the civil penalty.

Plaintiff alleged that he and the citizens, residents and taxpayers of the City of Asheville had paid fines for overtime parking which constituted penalties or fines collected for a "breach of the penal laws of the State" and therefore, pursuant to article IX, section 7 of the North Carolina Constitution, belonged to the county to be "used exclusively for maintaining free public schools." The trial court agreed and granted partial summary judgment on the issue of liability, reserving for trial the determination of what constituted the "clear proceeds" of such fines.

The Court of Appeals, in a well-reasoned opinion by Chief Judge Morris, Judges Parker and Martin (Robert M.) concurring, affirmed, holding that the money "collected by reason of overtime parking ... is properly payable to the county school fund as penalties collected for breach of the penal laws of the State." 45 N.C. App. at 162, 263 S.E. 2d at 13. We allowed defendant's petition for discretionary review on 6 May 1980.

*Swain & Stevenson, by Joel B. Stevenson and Robert S. Swain, for plaintiff appellee.*

*Patla, Straus, Robinson & Moore, by Victor M. Buchanan, for defendant appellant.*

*Ernest H. Ball and Fred P. Baggett, for North Carolina League of Municipalities, Amicus Curiae.*

*Tharrington, Smith & Hargrove, by George T. Rogister and Richard A. Schwartz, for North Carolina School Boards Association, Inc., Amicus Curiae.*

BRANCH, Chief Justice.

The sole issue presented for decision is whether article IX, section 7, of our Constitution requires that the clear proceeds of the monies paid to defendant for violations of its overtime parking ordinance be appropriated to Buncombe County for the maintenance of its public schools. The pertinent provision of the North Carolina Constitution provides as follows:

> All moneys, stocks, bonds, and other property belonging to a county school fund, *and the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State,* shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools. [Emphasis supplied.]

Defendant contends that the ordinances involved here are not "penal laws of the State" and that any proceeds derived from violations of the ordinances are civil in nature and belong to the City.

Plaintiff concedes the general rule that penalties collected for violations of city ordinances are civil in nature. *See School Directors v. City of Asheville,* 137 N.C. 503, 50 S.E. 279 (1905); D. Lawrence, Local Government Finance in North Carolina 57 (1977). Plaintiff argues, however, that violations of town ordinances have been made criminal by virtue of G.S. 14-4 which provides:

> *Violation of local ordinances misdemeanor.* — If any person shall violate an ordinance of a county, city, or town, he shall be guilty of a misdemeanor and shall be fined not

more than fifty dollars ($50.00), or imprisoned for not more than thirty days.

Plaintiff's contention is further buttressed by G.S. 160A-175(b) which provides that "[u]nless the council shall otherwise provide, violation of a city ordinance shall be a misdemeanor as provided by G.S. 14-4."

Our cases admit of little doubt that the legislature in enacting G.S. 14-4 made criminal what would otherwise be civil penalties for violations of ordinances. *State v. Barrett,* 243 N.C. 686, 91 S.E. 2d 917 (1956); *School Directors v. City of Asheville, supra; Board of Education v. Henderson,* 126 N.C. 689, 36 S.E. 158 (1900). As we stated in *Board of Education v. Henderson, supra.*

> [a municipal corporation] has no right to create criminal offenses. And this being so, it was found to be almost impossible to administer and enforce a proper police government in towns and cities by means of penalties alone. It therefore became necessary to make the violation of town ordinances a misdemeanor — a criminal offense — which was done by section 3820 (now G.S. 14-4) of The Code.

126 N.C. at 691, 36 S.E. at 159.

We therefore do not hestitate to reiterate and to reaffirm our holding in *Henderson, supra,* that,

> all the fines . . . collected upon prosecutions for violations of the *criminal laws* of the State, whether for violations of . . . *ordinances* made criminal by [G.S. 14-4], or by other criminal statutes . . . belong to the common school fund of the county. It is thus appropriated by the Constitution, and it can not be diverted or withheld from this fund without violating the Constitution. [Emphasis in original.]

126 N.C. at 692, 36 S.E. at 159.

Even so, defendant contends that the instant case is distinguishable from the case where the violation of a city ordinance has been prosecuted to judgment and a fine imposed. Here the disputed proceeds result from payments *voluntarily* made by violators upon citations for overtime parking. Depending upon the ordinance in effect, the offenders would pay the appropriate penalty to the Police Department or the Clerk at City Hall, or would deposit the money in a designated receptacle

or mail the money to the City. Defendant thus argues that the sums received were not "fines" since they were not paid as a result of a criminal conviction. Defendant relies upon the following language from *Henderson* in support of its contention that the monies received here are civil penalties:

> A "fine" is the sentence pronounced by the court of a violation of the criminal law of the State ... a "penalty" is the amount recovered — the penalty prescribed for a violation of the statute law of the State or the ordinance of a town. This penalty is recovered in a civil action of debt.

126 N.C. at 691, 36 S.E. at 159. Defendant therefore concludes that since the proceeds here were civil "penalties" and not "fines," they properly belong to the municipality.

We agree that the case at bar differs from previous cases construing the constitutional mandate of article IX, section 7, since the sums here were voluntarily paid upon citations for violations. However, defendant's reading of the language used by the *Henderson* Court to differentiate "fines" from "penalties" is unduly restrictive. The heart of that court's distinction lies not in whether the monies are *denominated* "fines" or "penalties." Indeed, we have often stated that the label attached to the money does not control. *State v. Rumfelt*, 241 N.C. 375, 85 S.E. 2d 398 (1955); *School Directors v. City of Asheville*, 128 N.C. 249, 38 S.E. 874 (1901). Neither does the heart of the distinction rest in whether there has been an actual criminal prosecution resulting in a "sentence pronounced by the court." *Board of Education v. Henderson*, 126 N.C. at 691, 36 S.E. at 159. The crux of the distinction lies in the *nature* of the *offense* committed, and not in the *method* employed by the municipality to collect fines for commission of the offense. A "fine" is a "sum of money exacted of a person guilty of a misdemeanor, or a crime." *State v. Addington*, 143 N.C. 683, 686, 57 S.E. 398, 399 (1907); *State v. Rumfelt, supra*. The constitution mandates that "all fines collected in the several counties for any *breach of the penal laws* of the State" be appropriated to the school fund. The inquiry addressed by the *Henderson* Court, then, was whether the monies in dispute were collected for violations of the criminal laws of the State or for violations of city ordinances. The Court determined that, since G.S. 14-4

Cauble v. City of Asheville

makes violations of city ordinances misdemeanors, the sums in question were collected for breach of the State's penal laws.

We hold that the same result must ensue here. The Asheville Code makes it unlawful to park overtime. G.S. 14-4 specifically makes criminal the violation of a city ordinance, unless "the council shall provide otherwise" pursuant to G.S. 160A-175(b). Thus, where, as here, the ordinances do not provide otherwise, a person who violates the overtime parking ordinance also breaches the penal law of the State. *See State v. Barrett, supra.* Consequently, fines collected for overtime parking constitute fines collected for a breach of the penal laws of the State. We, therefore, hold that the clear proceeds of all penalties, forfeitures and fines collected for breaches of the ordinances in question remain in Buncombe County and be used exclusively for the maintenance of free public schools.

We note that the trial judge here ordered "that the *Board of Education of the County of Buncombe* have and recover of the Defendant City of Asheville an amount equal to the clear proceeds of all penalties, forfeitures, or fines collected for the violation of the parking ordinances." [Emphasis added.] This was error. The correct procedure requires that the clear proceeds of the monies collected by the City shall be paid to the Buncombe County finance officer who shall disburse those funds in the same manner as is provided for the disbursement of penalties, fines and forfeitures collected for other breaches of the penal laws of the State. Upon receipt of these monies, the finance officer of Buncombe County must "forthwith determine what portion of the total is due to *each* administrative unit in the county and remit the appropriate portion of the amount to the finance officer of each administrative unit." G.S. 115-100.35. [Emphasis added.]

The portion of the Court of Appeals decision affirming that part of Judge Bruce's judgment which adjudged that only the Board of Education of the County of Buncombe should have the right to recover "the clear proceeds of all penalties, forfeitures or fines collected for the violation of the parking ordinances" is reversed; in all other respects, the decision is affirmed. This cause is remanded to the Court of Appeals for further remand to the Superior Court of Buncombe County for entry of judgment consistent with this opinion.

Reversed in part; Affirmed in part and Remanded.

Justice Brock did not participate in the consideration or decision of this case.

Justice Exum dissenting.

Perceiving what I believe to be a fundamental flaw in the reasoning of the majority, I must respectfully dissent.

Under Article IX, § 7 of the North Carolina Constitution, "the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties *for any breach of the penal laws of the State*, shall belong to ... the several counties, and shall be ... used exclusively for maintaining free public schools." (Emphasis supplied.) The City of Asheville has an ordinance no. 376, which prohibits overtime parking. Under this ordinance a motorist who parks overtime in violation of it must pay a penalty of $1.00.

The question in this case is whether the $1.00 penalty collected by the City of Asheville from motorists who violate parking ordinance no. 376 constitutes a penalty, or fine,[1] collected for the breach of a *state penal law*. I submit that it does not.

The majority reasons: Violation of any city ordinance also constitutes a violation of a state penal law, to wit, G.S. 14-4, which by its terms makes the violation of a local ordinance a misdemeanor punishable by a fine of not more than $50.00 or imprisonment for not more than 30 days. A motorist who violates Asheville's parking ordinance no. 376 *ipso facto* violates the statute. Therefore the $1.00 collected by Asheville from a motorist who violates its parking ordinance is a fine collected for the breach of G.S. 14-4, a state penal law.

I agree with the majority's major and minor premises, but I cannot agree that the conclusion drawn by the majority flows

---

[1]The majority correctly concludes that the label attached to the monies paid, *i.e.*, "fine" or "penalty," makes no substantive difference. Indeed, *State v. Addington*, 143 N.C. 683, 685, 57 S.E. 398 (1907), relied on by the majority for a definition of "fine," points out that the word does not "always mean a pecuniary punishment ... inflicted by a court in the exercise of criminal jurisdiction. It has other meanings, and may include a forfeiture, or a penalty recoverable by civil action." What *does* make a difference is whether the monies are collected pursuant to the city ordinance itself, a state penal law, or both. The majority concludes both. In this I believe it has erred.

Cauble v. City of Asheville

logically from them. A person who may have in fact violated G.S. 14-4 pays no fine pursuant to that statute until he has been duly prosecuted and adjudged guilty of its violation both in fact and in law. I would hold that the $1.00, denominated in the ordinance itself as *the* penalty for its violation, constitutes a penalty collected for violation of the ordinance only. Although the motorist may have also violated G.S. 14-4 in fact, he has not violated it in law because he has neither been prosecuted for, pled guilty to, nor found guilty of its violation.

I disagree with the majority's statement, which seems to be the nub of its argument, that the method by which the $1.00 is collected is irrelevant. Money collected pursuant to a city ordinance is not necessarily money collected pursuant to a state statute even though both the ordinance and the statute may have been violated by the same act of the motorist. I agree with the majority's statement that a "fine" is a "sum of money exacted of a person guilty of a misdemeanor or a crime." The cases cited by the majority in support of this statement, *State v. Addington*, 143 N.C. 683, 686, 57 S.E. 398, 399 (1907); *State v. Rumfelt*, 241 N.C. 375, 85 S.E. 2d 398 (1955), were referring, of course, to a person who had been duly adjudged guilty in fact and in law.[2] The statement is not authority for the proposition that a person can be required to pay, or in fact pays, a fine for violating a state penal statute in the absence of due prosecution and judicial determination that the person is in fact and in law guilty of the violation.

There has been no such determination in this case. Asheville has not yet *invoked* G.S. 14-4. So far the city has invoked only its ordinance. The $1.00 penalty thus far paid by motorists is a penalty for violating that ordinance. By paying it the motorist admits having violated the ordinance in fact and in law[3] *in order to avoid* being prosecuted under, and perhaps being found

---

[2]*Addington* held that a proceeding by which defendant was determined to be the father of an illegitimate child was civil, not criminal; therefore defendant could not be fined or imprisoned, but could be required to pay an "allowance" to the child's mother. *Rumfelt* dealt with a defendant who had been found guilty by a jury of violating G.S. 20-162 which prohibits, among other things, parking within twenty-five feet from an intersection.

[3]He makes no such admission with regard to G.S. 14-4.

guilty of violating, G.S. 14-4, in which event he would be subject not only to imprisonment but also to a fine *assessed pursuant to that statute* considerably larger than the $1.00 penalty provided for in the ordinance. Such a fine, if paid, would belong to the county's school fund. The $1.00 penalty, I submit, does not.

Justice BRITT joins in this dissent.