STATE *v.* JOHN PALIN.

The obligation to give bond for the maintenace of a bastard, under an order of Court, is not *a debt*, within the provision of the State Constitution (Art. 1, Sec. 16) abolishing imprisonment for debt.

*Therefore*, a Court may imprison a putative father who refuses to give such bond. Such imprisonment is to be effected now under the act of April 10. 1869, in regard to *contempt*.

BASTARDY, tried before *Pool*, J., at Fall Term 1868, of the Superior Court of PASQUOTANK.

There was an issue made up in the said Court to determine whether the defendant was the father of the bastard child of one Nancy Harvey, with which he stood charged. The jury found in the affirmative; and the solicitor for the State moved for an order of affiliation, which was granted.

He also moved that the defendant be committed into the custody of the Sheriff until he should give bond for the maintainance of said bastard child, in the usual form, according to the act of 1866.

The defendant moved to be discharged from custody upon ground that the Constitution of the State abolishes imprisonment for debt, and repeals the act of 1866 in relation to the maintenance of bastards. His Honor held that under the Constitution of the State he had no power to imprison the defendant, and ordered his release; from which order the Solicitor prayed an appeal. Appeal granted.

*Attorney General*, for the State.

No counsel *contra*.

SETTLE, J. Section 16 of the Declaration of Rights declares that "there shall be no imprisonment for debt in this State except in cases of fraud."

Is the duty of maintaining a bastard child, imposed by our statute upon the father, such a debt as is contemplated by this provision of the Constitution? We think not.

It is a police regulation, the object of which is to compel the father of a bastard child to support his own offspring and save the public from the burden of its maintenance.

It is certainly a moral duty resting upon the father to support his offsping, whether they be legitimate or illegitimate; and the law enforces this duty. In the one case by recognizing the marriage contract, and enforcing the reciprocal duties of parent and child; in the other it cannot recognize the relation of parent and child through the marriage contract, but seizes upon the fact of parentage, and enforces the natural duty both for the good of the child and the protection of the public. The statute provides "that the father of such child or children, shall stand charged with the maintenance thereof, as the Court may order, and shall give bond with sufficient security, payable to the State of North Carolina, to perform said order, and to indemnify the county where such child or children, shall be

born, from charges for his, or their maintenance, and may be committed to prison, until he find sureties for the same, &c. "This is an enforcement of a duty, and cannot be said to be a *debt* due to the mother or any other person, but only a charge of maintenance.

Suppose the father takes the child under his own roof, or elsewhere, and maintains it in a suitable manner, keeping it off of the county, and the Court assents to and approves of the arrangement: This certainly does not answer our idea of *debt.* Or suppose the child should die: The obligation ceases at once.

It will be observed that the first step under our statute, is to be taken by a magistrate, and its object is to compel the mother to declare on oath, the father. If she refuses to do this, she shall pay a fine of five dollars, and give bond &c., but if she will do neither, "she shall be committed to prison until she shall declare the same, or pay the fine and give bond &c." Here the duty is in the alternative.

When she is committed to jail for a failure to declare the father, can it be pretended that it is an imprisonment for *debt?* But if she shall upon oath accuse any man of being the father, he shall enter into recognizance with sufficient security for his appearance, &c., otherwise he shall be committed to prison until he enter into such recognizance.

We must not confound the duty of giving the bond for indemnifying the county from charges for maintenance, with the remedies which arise upon the breach of the bond. If the Court has the authority to require of the father, the bond prescribed by statute, it follows that in case he refuses or fails to give the same, obedience can be enforced by imprisonment.

Disobedience to a legal order of a Court falls within the provisions of the act of the General Assembly, ratified the 10th day of April A. D. 1869, authorizing proceedings, as for contempt, to enforce civil remedies.

After the Court has charged the reputed father of a bastard child with its maintenance, if he shall neglect to pay the same, then the Court "after notice &c., may order an execu-

tion against the goods, chattels, lands and tenements of the father, for such sums as the Court shall adjudge sufficient for the maintenance of the bastard child or children."

This provision of our law contemplates these sums as *debts*, and they can only be collected as such.

We are to presume that the public will have ample protection from the Courts who will see that the bonds for maintenance are sufficient to save the Counties harmless, and we must not suppose that it was the intention of the framers of our Constitution, to break down the safeguards of society, by discharging men from the performance of moral and natural duties.

His Honor erred in holding that he had no power to imprison the defendant, until he should give the bond for maintenance.

Let this be certified &c.

PER CURIAM.                                        Error.