## STATE v. MORGAN.

(Filed February 27, 1906).

*Bastardy—Failure to Give Bond—Imprisonment—Right to Discharge—Imprisonment for Debt—Working on Roads —Costs in Criminal Cases.*

1. Revisal, section 1519, originally enacted in 1773, must be construed in connection with the other sections of the Revisal, 1352 and 1355, and does not repeal the latter statutes, which authorize and direct the working upon the public roads of those sentenced for nonpayment of costs in criminal cases.

2. Imprisonment of the putative father for failure to obey an order of maintenance, or to give the bond, is a matter of legislative discretion and is not imprisonment for debt.

3. Revisal, sections 1352 and 1355, do not include among those authorized to be worked upon the roads those "sentenced to the house of correction," nor does it include those who fail "to give bond for maintenance of a bastard," nor for "failure to pay costs," except, "those imprisoned for nonpayment of costs in criminal causes," therefore a defendant who was imprisoned for failure to give bond pursuant to a judgment in bastardy proceedings was entitled to his discharge, as bastardy is not a criminal action.

INDICTMENT for bastardy against Charles Morgan, heard by *Judge Fred Moore,* at the April Term, 1905, of the Superior ·Court of WAKE, on appeal by the State from an order of the clerk permitting the defendant to take the in--

solvent debtor's oath and be discharged.  From a judgment affirming the order of the clerk, the State appealed.

*Robt. D. Gilmer, Attorney-General,* and *J. C. L. Harris* for the State.

No counsel for the defendant.

CLARK, C. J.  The defendant, tried before a justice of the peace on a charge of bastardy upon the complaint of the mother of the child, did not deny the paternity and was therefore adjudged to pay her $50 allowance (Revisal, sec. 254,) for the maintenance of the child, a penny fine and $3.80 costs of the action and to give bond in the sum of $100 with surety to indemnify the county against any and all charges for the maintenance of the bastard child.  This judgment was in accordance with sections 254 and 259 of the Revisal of 1905.

The judgment further provides, "And in default of such payments and of the execution of said bond that he be committed to the house of correction of Wake County for the term of ten months, with authority to the commissioners of said county to work him on the public roads of the county," etc.  Section 262 of the Revisal provides, "In all cases arising under this chapter when the putative father shall be charged with costs or the payment of money for the support of a bastard child, and such putative father shall by law be subject to be committed to prison in default of paying the same, it shall be competent for the court to sentence such putative father to the house of correction for such time, not exceeding twelve months, as the court may deem proper.  Provided, that such person or putative father, at his discretion, instead of being committed to prison or to the house of correction, may bind himself as an apprentice to any person whom he may select," etc.  "The price obtained shall be paid to the county treasurer."

The defendant did not comply with the order of the court nor accept the option given him to bind himself as an apprentice to some person selected by himself. Thereupon the sentence to "ten months in the house of correction" became operative, if there was such "house of correction."

The Revisal, section 1352, authorizes the county commissioners to work upon the public works, highways and streets any persons imprisoned in jail "upon conviction of any crime or misdemeanor or who may be committed to jail for failure to enter into bond for keeping the peace, or for good behavior, and who fail to pay the costs," *provided,* "such prisoner or convict shall not be detained beyond the time fixed by the judgment of the court," and also provided the court should so authorize in its judgment. The Revisal, section 1355, makes it the duty of the judge, where "any county has made provision for the working of convicts upon the public roads," to sentence for the term for their imprisonment "all persons convicted of offenses" and sentenced to imprisonment in jail, or to the penitentiary for less than ten years, and all sentenced to imprisonment for "nonpayment of costs in criminal cases." This statute has often been held constitutional. See cases cited in *State v. Young,* 138 N. C., 573.

The defendant having remained in jail twenty days, filed a petition before the clerk of the Superior Court of Wake, under authority of Revisal, sections 1915-1918, a, and upon taking the oath prescribed by section 1918, a was discharged from custody. The State and the woman appealed, assigning as grounds: (1) The imprisonment of the defendant was for a definite and fixed term, under Code, section 38 (now Revisal, sec. 262), and the clerk had no power to discharge him. (2) Because the defendant did not aver that he had paid or worked out half his costs, as required by chapter 419, Laws 1889 (now Revisal, sec. 1355).

The defendant relies for his discharge upon the Revisal,

section 1915, which authorizes such discharge upon the procedure provided for in that chapter of:

"1. Every putative father of a bastard committed for a failure to give bond, or to pay any sum of money ordered to be paid for its maintenance. 2. Every person committed for the fine and costs of any criminal prosecution."

But that section originally enacted in 1773, must be construed in connection with the other sections of the Revisal, and does not repeal the later statutes, which authorize and direct the working upon the public road of those sentenced for nonpayment of costs in criminal cases, as Revisal, sections 1352, 1355 and others, which are a modification of the general terms of the earlier statute (now Revisal, section 1915). That earlier statute applied to a condition of things when the working out of costs was unknown, and the defendant, without this provision for relief, would be imprisoned without hope of discharge. It does not apply to counties where provision for working out the costs is now made. The earlier statute, section 1915, does not repeal those enacted much later, sections 1352, 1355, but the latter modify it. This has been so held in *State v. Manuel,* 20 N. C., 146. All three sections being re-enacted into the Revisal at the same time, they must be construed together.

That section 1915 of the Revisal, authorizing the discharge of insolvents in the mode therein prescribed, is modified by the later statute (passed in 1887), now Revisal, section 1355, may be seen by reference to the following language of section 1355: "When any county has made provision for the working of convicts upon the public road * * * it shall be lawful for, and the duty of the judge holding court in said counties to sentence to imprisonment at hard labor on the public roads for such terms as are now prescribed by law for their imprisonment in the county jail or in the State's prison, the following classes of convicts (naming them.) In such counties * * * also all *insol-*

*vents,* who shall be imprisoned by any court in said counties for nonpayment of costs in criminal causes, may be retained in imprisonment and worked on the public roads until they have repaid the county to the extent of the half fees charged up against each county for each person *taking the insolvent oath."* There are further provisions that the "rate of compensation allowed each insolvent for work on the public roads shall be fixed by the county commissioners at a just and fair compensation;" and section 1352 further provides that such insolvent "shall not be detained beyond the time fixed by the judgment of the court."

Some one must labor to pay off the half costs incurred by an insolvent convicted of crime, and the Legislature thought it better that the lawbreaker should do this, and to that extent improve the public roads than that the punishment should fall upon hard-working citizens of earning money to pay what convicted criminals should earn by their own labor, and the criminals are safeguarded both by fair valuation for their services and the judgment limiting the time they may serve. There is no constitutional provision denying this power to the Legislature.

The defendant then relies upon the ground that the sentence to the house of correction is unconstitutional because it is for nonpayment of debt. There is a failure to discharge a public duty, to-wit, to provide for the maintenance of the bastard child and prevent its being a charge upon the county and to give bond to protect the public from such liability. This public duty can be enforced by appropriate remedy, like failure to work the public roads, to serve on the jury, to serve in the army, to pay alimony ordered *(Pain v. Pain,* 80 N. C., 325), or the like, and it was competent for the General Assembly to provide that upon failure to save the public harmless from being taxed to support the defendant's bastard, or to select some one to whom he might apprentice himself to earn money for that purpose,

the court could sentence the defendant "not exceeding twelve months." *State v. Palin,* 63 N. C., 471; *State v. Beasley,* 75 N. C., 212; *State v. Edwards,* 110 N. C., 512. This is not punishment for crime, but enforcement of the order of the court, as in case of a refusal to obey an order for alimony or contempt in disobeying any other order; the statute in this case making the limit twelve months. The sentence to the house of correction is valid enough, if there was a house of correction. The defendant, however, did not complain of that sentence, which he was not undergoing, but of being ordered to work on the public roads.

The defendant further contends that any order of imprisonment for nonpayment of a fine and costs or that the defendant be set to work them out, on the public works and roads, is unconstitutional because it is "imprisonment for debt." It is true that a fine and costs are also debts, but they are more. A fine and costs in criminal actions are a part of the punishment imposed as a result of the conviction and judgment, and, if not paid, imprisonment at hard labor can be imposed upon such failure. This has always and everywhere been held. "It is competent for the Legislature to impose hard labor upon a defendant for nonpayment of the costs of the prosecution, this being part of the punishment." 11 Cyc., citing *Joice ex parte,* 88 Ala., 128; *State ex parte,* 87 Ala., 46; *Berry v. Brislan,* 86 Ky., 5; *State v. Brannon,* 34 La. Ann., 942; *Meyer ex parte,* 57 Miss., 85; *Eaton v. State,* 15 Lea., 200; 8 A. & E. Enc., 992, 993. "Neither fines, forfeitures nor costs in criminal cases are debts within the meaning of the prohibition against imprisonment for debt." *In re Sanborn,* 52 Fed., 583, and other cases cited 10 Century Digest, sec. 151½, cols. 1472-1479.

"Imprisonment for nonpayment of the costs of the prosecution is not repugnant to the constitutional prohibition of imprisonment for debt." 8 Enc. Pl. & Pr., 994, citing numerous cases from Alabama, Connecticut, Illinois, In-

diana, Kansas, Maryland, Mississippi, North Carolina, Tennessee and Texas. The decisions as well as the statutes in this State are ·fully in accord with these authorities. Among them are *State v. Manuel,* 20 N. C., 146, where the subject is interestingly and exhaustively discussed by *Judge Gaston* (p. 159); *State v. Cannady,* 78 N. C., 542; *State v. Wallin,* 89 N. C., 580.

Working out fines and costs in criminal cases has always been held a matter within legislative power. *Ex parte Meyer,* 57 Miss., 85; *ex parte State,* 87 Ala., 46; *ex parte Joice,* 88 Ala., 128; *Eaton v. State,* 15 Lea., 200. "No practice is better settled," says *Judge Catron. Hill v. State,* 2 Yer., 247; *State v. Williams,* 97 N. C., 414; 1 Bishop Cr. Pr., sec. 1321. An offender against the ordinances of a city may be imprisoned for nonpayment of costs of conviction. *Berry v. Brislan,* 86 Ky., 5. A prosecutor taxed with the costs of a malicious or frivolous prosecution may be imprisoned for nonpayment of the same. *Green v. State,* 112 Ga., 52.

Imprisonment of the putative father for failure to obey an order of maintenance, or to give the bond is sustained wherever the statute so authorizes. It is a matter of legislative discretion, and is not imprisonment for debt. *State v. Palin,* 63 N. C., 471; *State v. Edwards,* 110 N. C., 512; *Woodcock v. Walker,* 14 Mass., 386, and other cases cited 6 Century Digest, sec. 209, vol. 1988, *et seq.* Also numerous cases cited 5 Cyc., 670, 671; *State v. Yandle,* 119 N. C., 874; *State v. Nelson, Id.,* 797. The last two cases have been overruled only in so far as they held that bastardy is a criminal action. *State v. Liles,* 134 N. C., 735.

The defect, however, in the contention for the State is that Revisal, sections 1352 and 1355, do not include among those authorized to be worked upon the roads, those "sentenced to the house of correction," nor does it include those who fail "to give bond for maintenance of a bastard," nor for

STATE *v.* MORGAN.

failure to pay costs except "those imprisoned for nonpayment of costs in *"criminal* causes." In the recent case of *State v. Liles,* 134 N. C., 735, the court reviewed all the cases upon the nature of bastardy proceedings and held in accordance with our long line of decisions (overruling two or three later cases to the contrary) and in accordance with the almost uniform holding in other States (134 N. C., p. 741), that bastardy is not a criminal action at all, but it is a *quasi* civil regulation to enforce a police regulation for the purpose of securing the maintenance of the child and to prevent the costs thereof falling upon the taxpayers, and that the object of such proceeding is not the punishment of the father. The criminal offense is fornication and adultery, and in that the mother instead of being complainant would properly be a co-defendant.

For these reasons the defendant was entitled to be discharged from custody. Whether he ought not rather to have been set at large upon a writ of habeas corpus than by this proceeding is a matter we are not called upon to discuss, since we cannot remand him to illegal custody.

Affirmed.

WALKER and CONNOR, JJ., concur in result.