BETTY DONOHO, Plaintiff, and THE BUNCOMBE COUNTY BOARD OF EDUCATION, Intervenor Plaintiff v. THE CITY OF ASHEVILLE, COUNTY OF BUNCOMBE and WESTERN NORTH CAROLINA REGIONAL AIR POLLUTION CONTROL AGENCY, Defendants

No. COA01-1293

(Filed 17 September 2002)

**Penalties, Fines and Forfeitures— local air quality ordinances—fines payable to county school fund**

Civil fines and penalties assessed by a regional air pollution control agency for violations of local air quality ordinances and regulations are payable to the county school fund pursuant to N.C. Const. art. IX, § 7 because the local ordinances are enacted under authority delegated by the State and the Environmental Management Commission in order to enforce State-mandated air quality standards and constitute "penal laws" within the meaning of N.C. Const. art. IX, § 7.

Appeal by plaintiff from judgment and order entered 25 June 2001 by Judge J. Marlene Hyatt in Buncombe County Superior Court. Heard in the Court of Appeals 12 June 2002.

DONOHO v. CITY OF ASHEVILLE

[153 N.C. App. 110 (2002)]

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Albert L. Sneed, Jr., for plaintiff appellant.*

*Roberts & Stevens, P.A., by Cynthia S. Grady, for intervenor plaintiff appellant.*

*Siemens Law Office, P.A., by A. James Siemens, for Western North Carolina Regional Air Pollution Control Agency; Robert W. Oast, Jr., for the City of Asheville; and Stanford K. Clontz, for County of Buncombe, defendant appellees.*

McCULLOUGH, Judge.

Plaintiff Betty Donoho is a taxpayer and resident of Asheville, North Carolina. On 30 June 2000, she instituted this lawsuit and sought both a declaratory judgment and injunctive relief. Plaintiff requested that the trial court (1) enjoin the City of Asheville and Buncombe County from forming a charitable clean air trust fund; and (2) divert funds intended for the charitable clean air trust fund to attorney fees and various school boards.

The facts leading to plaintiff's lawsuit are as follows: the Western North Carolina Regional Air Pollution Control Agency (the Agency) was created in 1970 as a local air pollution control agency pursuant to N.C. Gen. Stat. § 143-215.112(c)(1) (2001). The Agency was formed by a joint agreement between the local governments of Haywood County, Buncombe County, and the City of Asheville after those entities determined that "it is in the best interest of the citizens of their respective localities that a Regional Air Pollution Control Program be established to administer and enforce an effective Air Pollution Control Program throughout Buncombe and Haywood Counties and the City of Asheville[.]" The Agency existed in the same form until 1995, when it was reaffirmed pursuant to Article 20, Chapter 160A of the North Carolina General Statutes, which allows units of local government to jointly exercise their powers.

On 30 June 2000, Haywood County officially withdrew from the Agency. The remaining members continued to operate the Agency until 13 July 2000, when the North Carolina Environmental Management Commission (the Commission) ratified a new agreement between Buncombe County and the City of Asheville to form the present local agency, the Western North Carolina Regional Air Quality Agency.

**DONOHO v. CITY OF ASHEVILLE**

[153 N.C. App. 110 (2002)]

When the original Agency was terminated on 13 July 2000, it had an approximate fund balance of $800,000.00. About half that amount represented the proceeds of Title V permit fees, while the other half represented a combination of funds, including proceeds of civil penalties assessed for violations of local ordinances which adopted state and federal air quality standards. While the Agency existed, Buncombe County held and administered the Agency's funds. On 31 January 1997, the Buncombe County Board of Education (the Board) wrote a letter demanding payment of all the fines collected by the Agency to the school board. On 7 March 1997, Buncombe County refused the Board's request.

The Agency intends to remit these remaining funds to a clean air trust fund, the purpose of which will be to leverage grants and other revenues to improve air quality in the City of Asheville and Buncombe County. Plaintiff's 30 June 2000 lawsuit requested the following types of relief:

1.  That the Court enter an injunction restraining the City and the County from paying over said monies to the said Charitable Trust until the Court can determine what amount thereof represents fines and penalties subject to the constitutional requirement alleged and whether or not the payments are otherwise legal.

2.  That the Court enter a Declaratory Judgment as to the liability of the City, the County and the Western North Carolina Air Pollution Control Agency to pay over fines and penalties to the appropriate School Fund.

3.  That the Court enter an Order of Mandamus to the County and the City to pay over the funds declared by the Court to be subject to the constitutional requirement.

4.  That the Courts declare whether or not any payment of these funds to the Trust is legal and, if so, to what extent.

5.  That the Court award the Plaintiff [her] attorney's fees in accordance with law.

6.  That the Court determine the amount of excess fees pursuant to G.S. § 143-215.3(a)(1d) which should be remitted to the agency administering the program for the next fiscal year and order that said sums be paid to said agency.

7. That the costs of this action be taxed to the City of Asheville and the County of Buncombe.

On 10 October 2000, the Board was permitted to intervene.

On 25 June 2001, the trial court considered several motions by the parties, including the City of Asheville's motions to dismiss, Buncombe County's motion for partial summary judgment, the Agency's motions to dismiss and motions for partial summary judgment, and plaintiff Donoho's motion for partial summary judgment (which was joined in by the Board). At this point, plaintiff and the Board conceded that the Title V permit fees were not at issue in this case and the trial court issued an order dismissing the Title V claim on 15 May 2001. On 25 June 2001, the trial court granted the Agency's motion for summary judgment and concluded the civil penalties assessed by the Agency were not assessed by a state agency and were not assessed pursuant to a penal law of the state. Plaintiff Donoho and the Board appealed.

On appeal, plaintiff and the Board argue the trial court erred in concluding that the fines levied for the violations of the local ordinances and regulations were not subject to Article IX, Section 7 of the North Carolina State Constitution. They further argue that such assessments were, in reality, for violations of the penal laws of the State. After careful consideration of the record and the arguments of the parties, we agree with plaintiff Donoho and the Board and reverse and remand the case to the trial court for proceedings consistent with this opinion.

In North Carolina, air pollution control is governed by Chapter 21B of the North Carolina General Statutes. In that Chapter, the state granted the Department of Environment and Natural Resources the power to administer the air quality program for the state. *See* N.C. Gen. Stat. § 143-215.106 (2001). The statutory scheme for regulating air pollution is a statewide framework achieved through the exercise of the State's police power; the fines and penalties collected are also part of the State regulatory scheme. N.C. Gen. Stat. § 143-215.114A(h) (2001) specifies that "[t]he clear proceeds of penalties provided for in this section shall be remitted to the Civil Penalty and Forfeiture Fund in accordance with G.S. 115C-457.2." N.C. Gen. Stat. § 115C-457.2 states:

The clear proceeds of all civil penalties and civil forfeitures that are collected by a State agency and are payable to the County

School Fund pursuant to Article IX, Section 7 of the Constitution shall be remitted to the Office of State Budget and Management by the officer having custody of the funds within 10 days after the close of the calendar month in which the revenues were received or collected. Notwithstanding any other law, all funds which are civil penalties or civil forfeitures within the meaning of Article IX, Section 7 of the Constitution shall be deposited in the Civil Penalty and Forfeiture Fund. The clear proceeds of such funds include the full amount of all such penalties and forfeitures collected under authority conferred by the State, diminished only by the actual costs of collection, not to exceed ten percent (10%) of the amount collected.

Funds so deposited are then allocated to local school administrative units pursuant to N.C. Gen. Stat. § 115C-457.3 (2001).

Under N.C. Gen. Stat. § 143-215.111(3) (2001), the North Carolina Environmental Management Commission has the power "[t]o encourage local units of government to handle air pollution problems within their respective jurisdictions and on a cooperative basis, and to provide such local units technical and consultative assistance to the maximum extent possible." The local governments are, in turn, allowed to establish local air pollution control programs pursuant to the terms and conditions of N.C. Gen. Stat. § 143-215.112 (2001). N.C. Gen. Stat. § 143-215.112(b) provides the sole method by which local governments may establish and administer an air pollution control program:

(b) No municipality, county, local board or commission or group of municipalities and counties may establish and administer an air pollution control program unless such program meets the requirements of this section and is so certified by the Commission.

Moreover, under N.C. Gen. Stat. § 143-215.112(c)(4), certified local air pollution control programs are authorized to adopt ordinances, resolutions, rules, or regulations necessary to establish and maintain an air pollution control program and will not be approved by the Commission unless they do so.

"Each governing body, or its authorized agent, shall have the power to assess civil penalties under G.S. 143-215.114A." N.C. Gen. Stat. § 143-215.112(d)(1)(1a) (2001). Violations of the ordinances,

resolutions, rules or regulations of the local programs can carry criminal penalties ranging from misdemeanors to felonies. *See* N.C. Gen. Stat. § 143-215.112(d)(1) and N.C. Gen. Stat. § 143-215.114B (2001). Buncombe County's response to plaintiff's request for admissions acknowledged that all penalties in this case were assessed pursuant to N.C. Gen. Stat. § 143-215.112(c)(1)(a) and N.C. Gen. Stat. § 143-215.114A.

Defendants argue the fines were levied for violations of local regulations, standards and permits of the Agency, which were peculiar to its operation as a local air pollution control program. Plaintiffs, on the other hand, argue that the fines and penalties were collected under authority conferred by the state and were required to be paid to school boards under N.C. Gen. Stat. § 115C-437 and Article IX, Section 7 of the North Carolina Constitution. Article IX, Section 7 states:

### County School Fund.

All moneys, stocks, bonds, and other property belonging to a county school fund, and the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

Additionally, N.C. Gen. Stat. § 115C-437 (2001), which interprets N.C. Const. Art. IX, Section 7, states that:

The clear proceeds of all penalties and forfeitures and of all fines collected for any breach of the penal laws of the State, as referred to in Article IX, Sec. 7 of the Constitution, shall include the full amount of all penalties, forfeitures or fines collected *under authority conferred by the State*, diminished only by the actual costs of collection, not to exceed ten percent (10%) of the amount collected.

N.C. Gen. Stat. § 115C-437 (emphasis added).

The phrase "all fines collected for any breach of the penal laws of the State" is included in the definition of "clear proceeds" in § 115C-437. The only remaining questions are whether the statute encompasses other civil penalties and whether the penalties in the case *sub judice* were collected under authority conferred by

the state. Appellants believe both questions should be answered in the affirmative, because the only authority to levy the fines comes from state law. On this point, our Supreme Court stated:

> The crux of the distinction lies in the *nature* of the *offense* committed, and not in the *method* employed by the municipality to collect fines for commission of the offense. A "fine" is "a sum of money exacted of a person guilty of a misdemeanor, or a crime." *State v. Addington,* 143 N.C. 683, 686, 57 S.E. 398, 399 (1907); *State v. Rumfelt,* [241 N.C. 375, 85 S.E.2d 398 (1955).] The constitution mandates that "all fines collected in the several counties for any *breach of the penal laws* of the State" be appropriated to the school fund. The inquiry addressed by [*Board of Education v. Henderson,* 126 N.C. 689, 36 S.E. 158 (1900)], then, was whether the monies in dispute were collected for violations of the criminal laws of the State or for violations of city ordinances.

*Cauble v. City of Asheville,* 301 N.C. 340, 344, 217 S.E.2d 258, 260-61 (1980), *aff'd,* 314 N.C. 598, 336 S.E.2d 59 (1985) (emphasis in original). The Board correctly points out that several statutes refer to the State's ultimate responsibility in the area of air pollution and air quality. *See* N.C. Gen. Stat. § 143-211 (2001) (stating that "[i]t is hereby declared to be the public policy of this State to provide for the conservation of its water and air resources[]" and affirming "the State's ultimate responsibility for the preservation and development of these resources[]"); § 143-215.106 (referring to "the air quality program of the State[]"); § 143-215.105 (2001) (air pollution control); and § 143-215.112 (State Commission's role in reviewing and certifying all local air pollution control programs).

These statutes all reinforce the concept that the actions of the local Agency are actually those of the State Commission and that, in essence, the State allows local agencies to act in lieu of the Commission if standards at least as strong as the State standards are adopted and such are enforced by local ordinances. *See generally* 24 Strong's N.C. Index 4th *Principal and Agent §§* 1-3, 8-10 (1993); and 3 Am. Jur. 2d *Agency §§* 1-8 (2002) (principles of agency law). In sum, the only power conferred upon the Agency to levy fines is that power conferred by State law; when the penalties were levied, they were levied only for a violation of the ordinance enacted pursuant to that authority.

While *Cauble* dealt with overtime parking fines levied pursuant to N.C. Gen. Stat. § 14-4, N.C. Const. Art. IX, Section 7 also encompasses

penalties or forfeitures. A "penal law" is any state law, the violation of which results in a fine, penalty or forfeiture. *See* N.C. Const. Art. IX, Section 7. We hold that a local ordinance, which is enacted pursuant to authority delegated by the state and the Commission and passed to enforce state-mandated air quality standards, is such a law. *See Craven County Bd. of Education v. Boyles,* 343 N.C. 87, 468 S.E.2d 50 (1996) (monies paid to Department of Environment, Health and Natural Resources pursuant to a settlement agreement for violations of environmental laws held to constitute a penalty, fine, or forfeiture under Article IX, Section 7 of the North Carolina Constitution). Absent the statutory scheme described above, the Agency had no legal right to exist, much less assess penalties for violations of air quality standards. The local program acts, in effect, as an agent for the state and its failure to properly enforce the adopted air quality standards will result in the Commission supplanting the local agency. *See* N.C. Gen. Stat. § 143-215.112.

While the penalties were not payable to the State Treasurer (i.e., "accrue to the State"), this fact is not determinative of the case's outcome. Several cases have held that the phrase "accrue to the State" should be taken in the context in which it was developed—as opposed to being payable to a private party. *See Katzenstein v. R.R. Co.,* 84 N.C. 688 (1881); *Hodge v. R.R.,* 108 N.C. 24, 12 S.E. 1041 (1891); *Mussallam v. Mussallam,* 321 N.C. 504, 364 S.E.2d 364, *reh'g denied,* 322 N.C. 116, 367 S.E.2d 915 (1988); *State ex rel. Thornburg v. House and Lot,* 334 N.C. 290, 432 S.E.2d 684 (1993); and *Craven County,* 343 N.C. 87, 468 S.E.2d 50.

In *Mussallam,* our Supreme Court stated:

We interpret the provisions of section 7 relating to the clear proceeds from penalties, forfeitures and fines as identifying two distinct funds for the public schools. These are (1) the clear proceeds of all penalties and forfeitures in all cases, regardless of their nature, so long as they accrue to the state; and (2) the clear proceeds of all fines collected for any breach of the criminal laws. . . . The term "penal laws," as used in the context of article IX, section 7, means laws that impose a monetary payment for their violation. The payment is punitive rather than remedial in nature and is intended to penalize the wrongdoer rather than compensate a particular party. *See* D. Lawrence, *Fines, Penalties, and Forfeitures: An Historical and Comparative Analysis,* 65 N.C.L. Rev. 49, 82 (1986). Thus, in the first category, the monetary

**DONOHO v. CITY OF ASHEVILLE**

[153 N.C. App. 110 (2002)]

payments are penal in nature and accrue to the state regardless of whether the legislation labels the payment a penalty, forfeiture or fine or whether the proceeding is civil or criminal.

*Mussallam*, 321 N.C. at 508-09, 364 S.E.2d at 366-67. In the present case, both Buncombe County and the Agency admitted the penalties they assessed were punitive in nature and were intended to punish violators of the Agency's ordinances, resolutions, rules and regulations. In that regard, the present case is similar to *Craven County*, where payments in settlement of a civil penalty were subject to the constitutional mandate of Article IX, Section 7 and thus payable to the school board. We believe this interpretation of the phrase "accrue to the State" comports with the plain language of N.C. Const. Art. IX, Section 7 and N.C. Gen. Stat. § 115C-437.

It would be anomalous for violations of state-mandated air quality standards to result in civil penalties allocated to local school boards in all counties where the Commission enforces the state air pollution laws but a similar violation in the counties with local programs approved by the Commission experienced a different result. If such were the case, every county and local governmental unit could circumvent the state constitution by setting up a local air quality enforcement unit pursuant to state-delegated authority, and thereby develop a new revenue stream, while depriving the schools of funds directed to them by Article IX, Section 7 of the North Carolina Constitution.

After careful examination of the record and the arguments of the parties, we conclude the trial court erred in granting partial summary judgment in favor of defendants. The trial court's judgment and order are reversed and the case is remanded to the trial court for entry of summary judgment in favor of plaintiff Donoho and the Buncombe County Board of Education.

Reversed and remanded.

Judges TIMMONS-GOODSON and BRYANT concur.